**Ray E. VINTILLA, Carla M. Vintilla, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 90–3502.

United States Court of Appeals, Eleventh Circuit.

May 22, 1991.

John R. Vintilla, Cleveland, Ohio, for plaintiffs-appellants.

Gary R. Allen, Chief, David A. Hubbert, Ann B. Durney, Tax Div., Appellate Section, U.S. Dept. of Justice, Washington, D.C., Kendell W. Wherry, Asst. U.S. Atty., Orlando, Fla., for defendant-appellee.

Before JOHNSON and COX, Circuit Judges, and GODBOLD, Senior Circuit Judge.

**PER CURIAM:**

Taxpayers Ray and Carla Vintilla appeal the district court's grant of the Internal Revenue Service's ("IRS") motion for summary judgment in their suit against the IRS for a tax refund. The district court found that the claim was barred on the ground that the statute of limitations for filing for a tax refund had expired.

## I.  BACKGROUND OF THE CASE

Ray Vintilla was a management employee of Orinoco Mining Company, a Venezuelan subsidiary of the United States Steel Corporation ("U.S. Steel") until 1978 when he was terminated. In accordance with Venezuelan law, U.S. Steel paid Vintilla a severance benefit called a "cesantia" and "antiguedades" ("C & A") in the lump sum amount of $252,065.90. U.S. Steel viewed the C & A as an advance payment of Vintilla's retirement benefits. The corporation refused to pay Vintilla his monthly retirement benefits until it had recouped the C & A by setting off the monthly benefits against the amount of the C & A payment.

In 1983, Vintilla and twenty-four other former Orinoco Mining Company employees filed suit against U.S. Steel under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, claiming that the corporation was wrongfully deducting the C & A money from their pension benefits. The district court ruled in favor of the corporation, and the Third Circuit affirmed. *Vintilla v. U.S. Steel Corp. Plan for Employee Pension Benefits*, 606 F.Supp. 640 (W.D.Pa.1985), *aff'd sub nom. Appeal of Ayo*, 782 F.2d 1026 (3d Cir.), *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1791, 90 L.Ed.2d 337 (1986).

In the meantime, the IRS determined that Vintilla and his wife Carla had failed to declare the 1978 C & A payment as income for the 1978 tax year. The IRS therefore assessed a deficiency against the Vintillas in the amount of $95,062.95. In November 1982, when the Vintillas first discussed the deficiency with the IRS, they explained the problem with the pension plan and inquired about getting a tax refund if they should lose the lawsuit against

U.S. Steel. The IRS official apparently suggested that if they lost the lawsuit they could return to the IRS for a refund. They paid the deficiency in January 1983.

In 1987, soon after certiorari was denied in the suit against U.S. Steel, the Vintillas put in a claim for the refund with the IRS. When the IRS failed to respond to their claim, the Vintillas filed an action against the IRS for recovery of their tax payment along with the interest and penalties assessed against them. They alleged that the IRS had wrongfully treated the 1978 C & A as income for the 1978 tax year even though U.S. Steel was recouping the lump sum payment on a monthly basis. Rather than being taxed for receipt of the C & A payment in one tax year, the Vintillas claimed that they should be taxed as receiving the pension benefits on a monthly basis in the amounts that the corporation was withholding and crediting toward the recovery of the C & A.

The IRS filed a motion to dismiss on the ground that the statute of limitations for filing for the refund had run. The court denied the motion. Both parties later submitted to the court cross motions for summary judgment, both of which the court denied in January 1989. In April 1989, the court agreed to reconsider the respective motions for summary judgment at the request of and upon the representation of the parties that there were no disputed issues of material fact and that the action was appropriate for summary judgment on the legal issues alone. In May 1990, the district court denied the Vintillas' motion for summary judgment and granted that of the IRS. This appeal ensued.

## II.  ANALYSIS

The Vintillas raise three issues on appeal. First, they claim that they complied with the statute of limitations. Second, they claim in the alternative that the limitations period should be equitably tolled. Third, they claim that the law of the case doctrine precludes dismissal of their complaint.

## A. Statute of Limitations

By statute, a taxpayer cannot begin a suit against the IRS "for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary." 26 U.S.C. § 7422(a). There is, moreover, a limitations period on filing a refund claim; such a claim must be filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." 26 U.S.C. § 6511(a). The Vintillas paid the tax in 1983, but did not file for their refund until 1987. Their claim therefore technically falls outside the limitations period, and the district court so held.

■ The Vintillas argue on appeal that their discussions with the IRS regarding their lawsuit against U.S. Steel and the possibility of a refund amounted to putting in a claim for a refund within the limitations period. These discussions, they argue, put the IRS on notice that they had a refund claim whose validity would be governed by the outcome of the lawsuit against U.S. Steel.

"An informal claim for a refund is valid under § 7422." See, e.g., Gustin v. United States, Internal Revenue Serv., 876 F.2d 485, 488 (5th Cir.1989). The IRS does not contest this point. However, it is also generally held that "[a]n informal claim must have a written component." Id. Moreover, "[a]n oral claim, even if it gives actual notice to an Internal Revenue Service employee that a refund is being filed, is not valid." Id. The Vintillas' argument that their informal oral claim for a refund is sufficient to toll the limitations period thus finds no support in case law.

## B. Equitable Tolling

■ The Vintillas also argue that principles of equity should toll the statute of limitations on the filing of their refund claim. They point out in particular that the other twenty-four plaintiffs in the U.S. Steel litigation were not required to pay a tax on their C & As upfront as the Vintillas

were, but had to pay taxes only as though the C & As were received in monthly installments under the pension plan. The district court noted that "the equitable considerations weigh heavily in the plaintiffs' favor."

This Circuit has stated, however, that " 'general principles of equity may not override statutory requirements for timely filing of tax refund claims.' " Republic Petroleum Corp. v. United States, 613 F.2d 518, 527 (5th Cir.1980) (quoting Kingston Prods. v. United States, 368 F.2d 281, 288, 177 Ct.Cl. 471 (1966)). "Unlike general statutes of limitation which govern independently existing causes of action between private parties, the timeliness requirement at issue here is not procedural, or 'remedial', but jurisdictional." Kreiger v. United States, 539 F.2d 317, 321 (3d Cir.1976). The Supreme Court recently explained the reasoning behind strict adherence to the limitations period in tax refund suits under sections 7422 and 6511(a) in United States v. Dalm, 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). The Court explained that the government has sovereign immunity from suit except when it consents to be sued, and " 'the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " Id. 110 S.Ct. at 1368 (quoting United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)). "A statute of limitations requiring that a suit against the Government be brought within a certain time period is one of those terms." Id. " '[A]lthough we should not construe a time-bar provision unduly restrictively, we must be careful not to interpret it in a manner that would "extend the waiver beyond that which Congress intended." ' " Id. (quoting Block v. North Dakota, 461 U.S. 273, 287, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983) (quoting United States v. Kubrick, 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979))). In drafting sections 7422 and 6511(a), Congress "legislated a set of exceptions to the limitations period prescribed." Id. 110 S.Ct. at 1369. If the Court broadened those exceptions, the

Court "would be doing little more than overriding Congress's judgment as to when equity requires that there be an exception to the limitations bar." [1] *Id.* Consequently, the district court was correct in holding that equity could not toll the limitations period in the Vintillas' case and that because of the time-bar the court lacked jurisdiction of the case.

### C. *The Law of the Case Doctrine*

■ The Vintillas finally argue that the district court's initial denial of the government's motion to dismiss the case amounts to an assumption of jurisdiction. They contend that the court's action became the "law of the case" and the court cannot now rule that it lacks jurisdiction in contradiction of its prior ruling.

The "law of the case doctrine" provides that:

"A decision of a legal issue or issues by an appellate court ... must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless [1] the evidence in a subsequent trial [w]as substantially different, [2] controlling authority has since made a contrary decision of the law applicable to such issues, or [3] the decision was clearly erroneous and would work a manifest injustice."

*United States v. Williams*, 728 F.2d 1402, 1406 (11th Cir.1984) (quoting *Baumer v.*

*United States*, 685 F.2d 1318, 1320 (11th Cir.1982)). It is clear, however, that "a court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the district court." *Id.* Consequently, "law of the case applies only where there has been a final judgment." *Gregg v. United States Indus., Inc.*, 715 F.2d 1522, 1530 (11th Cir.1983), *cert. denied*, 466 U.S. 960, 104 S.Ct. 2173, 80 L.Ed.2d 556 (1984). In the case at bar, the district court's denial of the government's initial motion to dismiss was not a final judgment. The court was therefore free to reconsider its ruling on jurisdiction at the summary judgment stage. The Vintillas' argument on this point is without merit.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the government.

---

1. Approximately nine months after issuing the opinion in *Dalm*, the Court decided *Irwin v. Veterans Admin.*, —— U.S. ——, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), a case in which a former government employee claiming to have been discriminatorily fired filed suit under Title VII after the limitations period had run. In discussing equitable tolling, the Court stated:

> A waiver of sovereign immunity "'cannot be implied but must be unequivocally expressed.'" *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969)). Once Congress has made such a waiver, we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver. Such a principle is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation.

> We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States. Congress, of course, may provide otherwise if it wishes to do so.

*Id.* 111 S.Ct. at 457.

The *Irwin* Court made no attempt to reconcile this language with the seemingly contradictory language of *Dalm*. The *Irwin* Court went on, however, to opine that the equitable relief concerning limitations periods typically afforded private litigants in federal courts is sparse. *Id.* "We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* 111 S.Ct. at 457–58 (footnotes omitted). The Vintillas do not claim to fit into either of these categories.