**FIRST ALABAMA BANK,
N.A., etc., Plaintiffs,**

**v.**

**UNITED STATES of America,
Defendant.**

**Civ. A. Nos. 89–0141–B, 89–0142–B.**

United States District Court,
S.D. Alabama, S.D.

June 5, 1991.

On Motion for New Trial July 26, 1991.

W. Dewitt Reams, Richard L. Reid, Mobile, Ala., for plaintiffs.

J.B. Sessions, U.S. Atty., Mobile, Ala., Carol Ide, Tax Div. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

BUTLER, District Judge.

This matter came before the Court for an evidentiary hearing on the defendant's motion to dismiss for lack of subject matter jurisdiction. These consolidated actions involve claims for recovery of federal estate taxes paid by the Estate of Bruce Cogle and for the recovery of federal estate and gift taxes paid by the Estate of Rosa Cogle. The government contends that because these actions were not timely filed they are barred by the statute of limitations and, therefore, this Court has no subject matter jurisdiction over these actions. For the reasons stated below, the Court finds that the actions are due to be dismissed for lack of subject matter jurisdiction.

### FINDINGS OF FACT

Plaintiffs First Alabama Bank, N.A., Bruce A. Cogle, Jr., and Jane C. Hamilton, coexecutors of the Estates of Bruce A. Cogle, Sr. and Rosa L. Cogle, have brought these actions to recover federal estate and gift taxes and interest assessed and collected by the United States. On October 5, 1982, plaintiffs filed the Estate Tax Return of Bruce A. Cogle, Sr. On December 13, 1984, plaintiffs filed the Estate Tax Return for the estate of Rosa L. Cogle. On September 4, 1985, plaintiffs filed a Gift Tax Return on behalf of the estate of Rosa L. Cogle for the calendar year 1982.

All three of these returns were audited by the IRS. At issue in all three returns was whether certain gifts made by Mr. and Mrs. Cogle were completed prior to Mr. Cogle's death. In September of 1985, the IRS auditor, Irving Buchalter, informed Richard Reed, the plaintiffs' attorney, that the statutory period of assessment was about to expire as to the Estate of Bruce Cogle and, therefore, it would be necessary for the IRS to issue a statutory notice of deficiency (also known as a 90 day letter). Mr. Buchalter suggested that, although there were no such time constraints with respect to the Gift and Estate Tax Returns of Rosa Cogle, it would be best to keep all three returns together since they involved the same issues of law and fact. Reed agreed and, in order to keep the returns together, waived the right of administrative appeal at that stage as to Rosa Cogle's estate and gift tax returns.

On September 11, 1985, the IRS issued statutory notices of deficiency for the Estate of Bruce Cogle, the Estate of Rosa Cogle and the Gift Tax Return of Rosa Cogle. On or about December 5, 1985, the Estate of Bruce Cogle paid the assessed deficiency and filed a claim for refund. On or about December 3, 1985, the Estate of Rosa Cogle paid the assessed deficiencies

for both the estate and gift returns and filed claims for refund.

Rather than reviewing the claims for refund, the IRS on January 16, 1986, denied the plaintiffs' claims by issuing a notice of disallowance as to each return. These notices informed plaintiffs that they had two years within which to file suit on their claims. According to Jim Duran, who at that time was a senior reviewer in the IRS quality assurance department, several factors led IRS to issue immediate notices of disallowance rather than to submit the claims for review. First, there had been previous waivers of appeal rights by these taxpayers. Second, the claims for refunds were accompanied by payments. Finally, the refund claims simply stated that the taxpayers disagreed with the determination but contained no specific information and no additional facts. Duran testified that these factors suggested to him to that the plaintiffs wanted to go immediately to district court and, consequently, he telephoned Reed to find out if this was indeed the taxpayers' intention. After Reed informed him that it was the taxpayers' intention to go to directly to district court, the IRS issued the notices of disallowance rather than reviewing the claims and issuing the customary thirty day letter.[1]

After receiving the notices of disallowance, Reed contacted Duran to determine why the notices were sent rather than the customary thirty day letters. At that time Reed told Duran that the plaintiffs had not intended to forego their right to administrative appeal. Duran told Reed that plaintiffs could obtain administrative review by refiling their claims with the IRS. On March 20, 1986, plaintiffs refiled their claims. These claims remained under submission for some time. Reed became concerned that the statute of limitations had commenced to run on January 16, 1986, the date of the first notice of disallowance. In his affidavit Reed states, "At that point in

time, I understood that absent some later action by the IRS contrary to that position [that the statute of limitations began to run on January 16, 1986], they might well be justified in asserting that position and might very well be successful."

On February 2, 1987, Reed wrote a letter to Buchalter requesting action on the refiled claims and requesting assurances that the statute of limitations was not running. Shortly thereafter, Buchalter telephoned Reed and advised him that a response to the refiled claims was forthcoming. Buchalter also informed Reed that the statute of limitations was not running at the time.

On May 1, 1987, the IRS issued a thirty day letter for the Estate of Bruce Cogle. On July 14, 1987, the IRS issued thirty day letters for Rosa Cogle's Estate and for Rosa Cogle's gift tax return. Plaintiffs filed protests of the proposed disallowances. Plaintiffs were subsequently afforded administrative review and declined an offer to settle. On August 10, 1988, the IRS issued a second round of statutory notices of disallowances for all three returns. The instant actions were filed on February 24, 1989.

## CONCLUSIONS OF LAW

▮ Under the doctrine of sovereign immunity, an action may be maintained against the government only if the government consents to suit. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The extent of the court's jurisdiction is defined by the terms of the government's consent to suit. *Lehman v. Nakshian*, 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). Thus, a plaintiff must comply with the terms of the government's consent to suit, including time limitations. *United States v. Michel*, 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598 (1931), *Vintilla v. United States*, 931 F.2d 1444 (11th Cir. 1991). The burden is on the plaintiff to

---

1. A statutory notice of disallowance is essentially the final IRS action on a claim for refund and indicates that the taxpayer has exhausted his administrative appeals. In most instances a thirty day letter informing the taxpayer of his right to administrative appeal is issued prior to the statutory notice of disallowance. Treas.Reg.

§§ 601.105(d), 601.105(e)(2). If the taxpayer wants to forego administrative appeal and file a claim in district court or the court of claims, the IRS will issue an immediate notice of disallowance without issuing a thirty day letter. Internal Revenue Service Manual § 4512.1(4)

prove the existence of subject matter jurisdiction. *Thomson v. Gaskill,* 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942).

A taxpayer's claim for refund is subject to the two year statute of limitations set forth in 26 U.S.C. § 6532(a).[2] According to that section the statute of limitations begins to run upon the mailing of the notice of claim disallowance. Any extension of the limitations period must be "agreed upon in writing between the taxpayer and the [IRS]." 26 U.S.C. § 6532(a)(2). Reconsideration of a claim following a notice of disallowance "shall not operate to extend the period within which suit may be begun." 26 U.S.C. § 6532(a)(4).

It is undisputed that plaintiffs failed to file this action within two years of the first notices of disallowance. It is also undisputed that there was no written agreement to extend the statute of limitations. However, plaintiffs contend that the statute of limitations did not begin to run until the time the second notices were mailed because the first notices were either issued in error or subsequently withdrawn. Alternatively, plaintiffs argue that the government is estopped by the actions of its agent from asserting the statute of limitations.

■ The vast majority of circuits have held that the issuance of a second notice of disallowance after reconsideration does not extend the statute of limitations.[3] It is true, as plaintiffs point out, that a few courts have construed § 6532(a) flexibly in order to avoid injustice. *See, e.g., Southeast Bank of Orlando v. United States,* 230 Ct.Cl. 277, 676 F.2d 660 (1982) (holding that where a claimant "is understandably confused by a second notice of disallowance and acts reasonably" statute of limitations runs from second notice); *Miller v. United States,* 500 F.2d 1007 (2d Cir.1974) (holding that where notice of disallowance was mailed, even though plaintiff signed

waiver of notice, statute of limitations ran from notice of disallowance rather than from waiver).

Plaintiffs rely primarily on *Beardsley v. United States,* 126 F.Supp. 775 (D.Conn. 1954), in which the court held that when "the notice had been sent after *inadvertent* omission of one usual step in the process of consideration, and where completion of consideration in regular course took more than two years from the time of the original notice, ... [the IRS] in effect withdrew the original notice by going back in the process to a stage prior to the time for giving notice, which stage had been omitted." *Id.* at 777 (emphasis added). The instant action is readily distinguishable from *Beardsley* and the other cases cited by plaintiffs. In those cases the courts fashioned a remedy to avoid an inequitable result. In *Beardsley* it was undisputed that the first notice was sent in error, because the IRS had failed to apprise the taxpayers of the examiner's report. Likewise, in *Miller,* taxpayers signed a waiver of disallowance which provided that the statute of limitations was two years from the date of the waiver, then the IRS erroneously mailed a notice of disallowance which stated that the statute of limitations ran from the date of the notice. In *Southeast Bank* the court found that the taxpayer was "understandably confused by a second notice of disallowance[ ] and act[ed] reasonably." *Southeast Bank,* 676 F.2d at 664.

In the case at hand, there was no erroneous action by the IRS nor was there any reasonable confusion on the part of the taxpayers as to the effect of the first notice of disallowance. In this case, the notices were not issued erroneously. Based on Mr. Duran's experience with similar claims and on his understanding from his conversation with Reed that the taxpayers

**2.** That section states, "No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of

mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates."

**3.** *See, e.g., Huettl v. United States,* 675 F.2d 239 (9th Cir.1982) and cases cited therein.

desired immediate disallowance, the IRS issued the notices without the customary thirty day letters.

■ Even Reed, the taxpayers' representative, understood that the statute of limitations began to run on the date of the first notice of disallowance. In his affidavit Reed states that he knew that "absent some later action by the IRS" the government might later be justified in asserting that the statute began to run from the January 16, 1986 notice. On February 2, 1987, Reed even wrote a letter requesting assurances that the statute was tolled by the reconsideration. Although he received no written reply, Reed contends that he was assured by Mr. Buchalter that the statute was tolled. However, Section 6532(a)(2) clearly requires that extensions of the statute of limitations be in writing. Section 6532(a)(4) provides that reconsideration does not toll the statute. Under these circumstances, reliance on an oral representation that the statute is tolled cannot be deemed reasonable.

■ Plaintiffs alternatively argue that the first notices were ineffective because the IRS had failed to consider the merits of the taxpayers claim prior to the first disallowance. If a taxpayer files a second claim for refund after a notice of disallowance which presents issues not previously considered, a second notice of claim disallowance commences the statute of limitations only as to the new issues presented in the second claim. *Huettl v. United States,* 675 F.2d 239 (9th Cir.1982). According to plaintiffs, because no issues were considered after the first claim, all the issues raised in the second claim were "new". Assuming, *arguendo,* that plaintiffs' argument is legally correct, the facts are not in plaintiffs' favor. Contrary to plaintiffs' assertions that the first claim was not considered, Duran testified at trial that the claims had been reviewed after the first refund claims

were filed. The review was not extensive because plaintiffs submitted no new information or specific facts and because the audit of the estates had been completed only a few months before.

■ Finally, plaintiffs argue that the government is estopped by the statement of Agent Buchalter that the statute of limitations was tolled. The Supreme Court has never decided whether the government can be estopped by the conduct of its agents. *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). Neither has the Eleventh Circuit addressed the issue. However, the majority of circuits that have recognized equitable estoppel against the government have required affirmative misconduct on the part of the government agent as well as the traditional elements of estoppel. *See United States v. Asmar,* 827 F.2d 907 (3d Cir.1987) (and cases cited therein); *see also Deltona Corp. v. Alexander,* 682 F.2d 888, 892 n. 6 (11th Cir. 1982).[4]

Although definitions of affirmative misconduct vary, the conduct at issue here does not rise to the level of affirmative misconduct under any definition. Some circuits have defined affirmative misconduct as " 'something more than mere negligence.' " *Portmann v. United States,* 674 F.2d 1155, 1167 (7th Cir.1982) (citing *TRW, Inc. v. Federal Trade Com.,* 647 F.2d 942, 951 (9th Cir.1981)). The Second Circuit has held that failure to perform an act required by law amounts to affirmative misconduct. *Corniel–Rodriguez v. INS,* 532 F.2d 301 (2nd Cir.1976).

It is instructive to consider the type of conduct that does not rise to the level of affirmative misconduct. In *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), the Supreme Court found no need to determine whether the

---

**4.** In addition to the finding, *infra,* that the plaintiff has failed to prove affirmative misconduct, the Court also finds that the plaintiff has failed to prove one of the essential elements of estoppel, namely, reasonable reliance. *See Akbarin v. INS,* 669 F.2d 839, 843 (1st Cir.1982) (and cases cited therein). For the reasons discussed

above, the Court finds that Reed could not have reasonably relied on the oral representation of an IRS agent that the statute of limitations was tolled when the statute clearly requires that extensions of the limitations period be in writing and that reconsideration does not toll the statute of limitations.

government was estopped by the actions of its agent because the agent's actions did not rise to the level of affirmative misconduct. In that case in response to a claimant's oral inquiry a Social Security Administration employee informed the claimant that she was not entitled to benefits and, contrary to the agency manual, failed to advise the claimant that she should file a written application for benefits.

Certainly, the actions of the IRS representative, Mr. Buchalter, are no more egregious than those of the government agent in *Schweiker.* At most, Mr. Buchalter's representation that the statute of limitations was tolled might be considered negligence since the agent admittedly did not have any expertise or knowledge concerning that issue. Unlike the government agent in *Corniel-Rodriguez,* Mr. Buchalter had no legal obligation to give plaintiffs information concerning the statute of limitations.

CONCLUSION

For the reasons stated above, the Court finds that the instant actions were not timely filed. According to the doctrine of sovereign immunity, this Court lacks subject matter jurisdiction over actions against the United States which do not comply with the terms of the government's consent to suit, including the applicable statute of limitations. Accordingly, it is

ORDERED that the defendant's motion to dismiss be and hereby is GRANTED.

ON MOTION FOR NEW TRIAL

This matter is before the Court on a motion for new trial or, in the alternative, to alter or amend the judgment filed by the plaintiffs in these consolidated actions. Plaintiffs contend that the Court's findings of fact and conclusions of law were erroneous in several respects. For the reasons stated below, the Court finds that the plaintiffs' motion is due to be denied.

Plaintiffs' first assignment of error involves the Court's factual finding that plaintiffs' attorney, Richard Reed, informed IRS Agent James Duran that the taxpayer's intention was to go directly to district court. Plaintiffs cite the following passage from Agent Duran's testimony in support of their contention that the Court misunderstood the testimony on this point:

At about that time [shortly after receiving the payment of taxes and claims for refund], it's my recollection that I contacted Mr. Reed and asked if the purpose for filing the claim was to go to District Court and he told me it was.

Plaintiffs contend that such a statement, if made, does not evidence any intention on Reed's part to go *directly* to district court but rather to go to district court *eventually,* after exhausting all administrative appeals.

Although it is not particularly clear from this passage of testimony, there is ample testimony by Agent Duran to support his conclusion that the plaintiff's intention was to forego administrative appeal and go directly to district court.

Q   Is it fair to say then that in the usual case if payment, a waiver of—if payment, a waiver and refund claim come in together that you would assume that the taxpayer is desiring to go immediately to District Court and seek a refund?

A   That would be may assumption.

Q   And Mr. Reed told you based on you recollection that that is what the representative of the Cogles intended to do?

A   That's correct.

Transcript of testimony of James Duran, at 22–23.

A   ... There are certain instances when a preliminary review was—dictates that the Service issue an immediate notice of claim disallowance. For example, if a case has been settled under a closing agreement in the past or tax protest or type claims. Some others are listed in the manual. Generally if the Service has already considered the matters before it and there is no information presented, we would make the determination that it would be a waste of resources to offer administrative appeal at that time.

Q   That is what—the later instance is what occurred in this case; is that correct?

A That is correct. That, coupled with the understanding that the taxpayer desired an immediate issue of the claim disallowance.

*Id.* at 25. After reviewing Agent Duran's testimony in its entirety, the Court is not persuaded that its finding of fact on this issue was erroneous.

Plaintiffs' second and third assignments of error are based upon plaintiffs' conclusion that the Court's finding that Reed told Duran that the taxpayers intended to go directly to district court was erroneous. According to plaintiffs, Duran's belief that the taxpayers intended to go to district court was unreasonable and, therefore, the first notice of disallowance was issued in error. Following this logic, the first notices of disallowance would have been ineffective and the statute of limitations would have begun to run only upon the issuance of the second notices. However, the Court is not persuaded that the first notices were issued erroneously. Therefore, the statute of limitations began to run from the first, rather than the second, notices of disallowance.

Finally, plaintiffs assert that the principle of equitable tolling should be applied in this action. In support of this argument plaintiffs cite *Irwin v. Veterans Administration,* — U.S. —, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), in which the Supreme Court held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Irwin,* — U.S. at —, 111 S.Ct. at 457, 112 L.Ed.2d at 444. Although it is not clear whether *Irwin* makes the principle of equitable tolling applicable in this action, *see Vintilla v. United States,* 931 F.2d 1444, 1447 n. 1 (11th Cir.1991), plaintiff is not entitled to relief under that doctrine in any event. In *Irwin* the Court noted that equitable relief is extended "only sparingly" and has been applied "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin,* — U.S. at —, 111 S.Ct. at 458, 112 L.Ed.2d at 444.

Neither of these situations is present here. Plaintiffs do not contend that they would fall into the first category. As to the latter category, there was no misconduct on the part of the government in this case that would amount to inducement or trickery. The only evidence that plaintiffs rely on in support of their equitable tolling argument is the statement of Agent Buchalter, in response to a question by Reed, that the statute of limitations was not running during the time the second claims for refund were under consideration. There is no evidence that Buchalter's answer was anything other than a misstatement of the applicable law, with which Buchalter was admittedly unfamiliar. There is no evidence from which the Court can infer that Buchalter's answer was designed to induce or trick plaintiffs.

In conclusion, the Court finds that the grounds set forth by the plaintiffs are without merit. Accordingly, it is ORDERED that plaintiffs' motion for a new trial or, alternatively, to alter or amend the judgment be and hereby is DENIED.