981 F.2d 1226
 71 A.F.T.R.2d 93-752, 93-1 USTC P 50,138
 FIRST ALABAMA BANK, N.A., Bruce A. Cogle, Jr., Jane C.
Hamilton, Co-Executors of the Estate of Bruce A.
Cogle, Sr., Deceased, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
FIRST ALABAMA BANK, N.A., Bruce A. Cogle, Jr., Jane C.
Hamilton, Co-Executors of the Estate of Rosa L.
Cogle, Deceased, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 91-7674.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 27, 1993.
 
 W. Dewitt Reams, Richard L. Reed and William W. Watts, Mobile, AL, for plaintiffs-appellants.
 Brian C. Griffin, Gilbert S. Rothenberg, Gary R. Allen, Robert L. Baker, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Alabama.
 Before ANDERSON, Circuit Judge, MORGAN and JOHNSON*, Senior Circuit Judges.
 ANDERSON, Circuit Judge:
 
 
 1
 This case involves an action under 26 U.S.C. § 7422(a) for refund of allegedly overpaid federal estate and gift taxes. The district court dismissed the suit as time-barred under the applicable two-year statute of limitations, 26 U.S.C. § 6532(a)(1). 768 F.Supp. 1522 (S.D.Ala.1991). On appeal, plaintiffs argue that this dismissal was erroneous because the statute of limitations was equitably tolled or, in the alternative, because the IRS had withdrawn the original, January 16, 1986, statutory notices of disallowance which the district court treated as having triggered the limitations period. We affirm.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 Plaintiffs-appellants First Alabama Bank, Bruce A. Cogle, Jr., and Jane C. Hamilton are co-executors for the Estates of Bruce A. Cogle and Rosa L. Cogle. During the years 1984 and 1985, the U.S. Internal Revenue Service ("IRS" or "Service") audited the Estate Tax Returns of both estates and the 1982 Gift Tax Return of the Estate of Rosa L. Cogle. The IRS issued statutory notices of deficiency pursuant to 26 U.S.C. § 6212(a) on all three returns, finding that more taxes were owed. Appellants paid the taxes assessed and then filed claims for refunds pursuant to 26 U.S.C. § 6511(a).
 
 
 3
 Rather than following the usual procedure, which would have entailed issuing a "thirty-day letter" and affording the taxpayers the opportunity to pursue an administrative appeal,[1] the Service instead denied the claims by issuing on January 16, 1986, statutory notices of disallowance. The statutory notices of disallowance triggered the commencement of the applicable two-year statute of limitations, 26 U.S.C. § 6532(a)(1), as was apparent from the notices themselves which read:
 
 
 4
 This letter is your legal notice that your claim is fully disallowed. If you wish to bring suit or proceedings for the recovery of any tax, penalties, or other monies for which this disallowance notice is issued, you may do so by filing such a suit with the United States District Court having jurisdiction, or the United States Claims Court. The law permits you to do this within two years from the mailing date of this letter[, January 16, 1986].
 
 
 5
 Following issuance of the January 16, 1986, notices, appellants' counsel telephoned the IRS agent and told him that appellants had not intended to forego their right to administrative appeal. The agent told counsel that appellants could obtain administrative review by refiling their claims with the IRS. District Court Opinion ("Opinion") 768 F.Supp. at 1524. On March 20, 1986, appellants refiled their claims. These new claims remained under submission for some time.
 
 
 6
 Appellants' counsel has stated in an affidavit that some time later he began to fear that, in spite of his having been instructed to refile the claims, the Service might nonetheless deem the two-year statute of limitations for bringing a refund suit in the district court, 26 U.S.C. § 6532(a)(1), to have started running at the time of the January 16, 1986, statutory notices of disallowance. Opinion 768 F.Supp. at 1524. On February 2, 1987, counsel wrote to the IRS agent requesting action on the refiled claims and seeking assurances that the statute of limitations was not running. The agent replied by telephone, informing counsel that a ruling on the refiled claims would be forthcoming and that the statute of limitations was not running. Id.
 
 
 7
 Several months later, the IRS issued thirty-day letters for each of the three new claims. Appellants filed protests of the proposed disallowances and were subsequently afforded administrative review. On August 10, 1988, the Service issued a second round of statutory notices of disallowance for the three claims.
 
 
 8
 This suit for refund of the allegedly overpaid taxes was filed in the district court on February 24, 1989. Following an evidentiary hearing, the court on June 5, 1991, dismissed the suit as time-barred, reasoning that the two-year statute of limitations, 26 U.S.C. § 6532(a)(1), had begun to run on January 16, 1986. This appeal followed.
 
 II. ISSUES ON APPEAL
 A. Equitable Tolling
 
 9
 Appellants argue that the IRS agent's oral assurance that the statute of limitations was not running, and the actions of the Service relating to the second round of claims, served to toll the limitations period. The district court concluded that such conduct was not of the sort required to toll a statute of limitations in a suit against the federal government. The court also found, alternatively, that the necessary element of reasonable reliance was lacking. Opinion 768 F.Supp. at 1526-1527 & n. 4.
 
 
 10
 Under the doctrine of federal sovereign immunity, the United States may be forced to pay monetary relief only to the extent that Congress has expressly consented to expose the federal fisc to such liability. United States v. Sherwood, 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941). Under 26 U.S.C. § 7422 Congress has authorized taxpayer suits against the government for refund of wrongly paid taxes. United States v. Michel, 282 U.S. 656, 658, 51 S.Ct. 284, 285, 75 L.Ed. 598 (1931); Howard v. United States, 125 F.2d 986, 992 (5th Cir.1942).[2] The scope of this waiver of sovereign immunity is limited by the conditions attached to it by Congress; among these conditions is the two-year statute of limitations prescribed under 26 U.S.C. § 6532(a)(1).
 
 
 11
 In Irwin v. Veterans Admin., 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Supreme Court adopted the general rule that where Congress has waived sovereign immunity and authorized suits against the federal government, there is a rebuttable presumption that "equitable tolling applicable to suits against private defendants should also apply to suits against the United States." 498 U.S. at ---, 111 S.Ct. at 457. We assume arguendo that the statute of limitations governing tax refund suits, 26 U.S.C. § 6532(a)(1), may under some circumstances be equitably tolled. Even if this is so, we conclude that such tolling could not have occurred in this case because the necessary element of reasonable reliance was absent. See Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946).
 
 
 12
 In this case, lack of reasonable reliance was an independent, although alternative, basis for the district court's rejection of appellants' equitable tolling argument. The district court found that "there was no reasonable confusion on the part of the taxpayers as to the effect of the first notice of disallowance." Opinion 768 F.Supp. at 1525. The court then concluded that
 
 
 13
 [T]he plaintiff has failed to prove one of the essential elements of estoppel, namely reasonable reliance. For the reasons discussed above, the Court finds that [appellants' attorney] could not have reasonably relied on the oral representation of [the] IRS agent that the statute of limitations was tolled when the statute clearly requires that extensions of the limitations period be in writing and that reconsideration does not toll the statute of limitations.
 
 
 14
 Id. at 1526-1527 n. 4 (citation omitted). Taxpayers knew or should have known that the original, January 16, 1986, statutory notices of disallowance triggered the commencement of the two-year statute of limitations. Indeed, the text of the notice itself advised taxpayers that they had two years from the mailing date of the notice to file suit. The appellants could not have reasonably relied upon the IRS agent's oral representation that the statute was not running in light of the express statutory requirement that extensions of the two-year statute of limitations be in writing. The relevant statute provides:
 
 
 15
 (2) Extension of time.--The 2-year period prescribed in paragraph (1) shall be extended for such period as may be agreed upon in writing between the taxpayer and the Secretary.
 
 
 16
 26 U.S.C. § 6532(a). With respect to the actions of the Service in suggesting that appellants refile their claims and in permitting administrative consideration of the refiled claims,[3] the appellants could not have reasonably relied upon these actions as tolling the statute of limitations in light of paragraph 4 of the same statute which expressly provides:
 
 
 17
 (4) Reconsideration after mailing of notice.--Any consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun.
 
 
 18
 26 U.S.C. § 6532(a). Under these circumstances, we cannot conclude that the district court was clearly erroneous in finding that there was no reasonable reliance. Thus, appellants' equitable tolling argument must be rejected.
 
 B. Withdrawal of the First Disallowances
 
 19
 The second argument appellants advance differs subtly from the first. They maintain that, by oral remarks and actions relating to the second round of claims, the Service represented that the first round of disallowance notices had in fact been withdrawn. Appellants contend that their causes of action therefore did not properly accrue until August of 1988 when the second round of statutory notices of disallowance was issued. Thus, they argue, the February 1989 suit is not time-barred.
 
 
 20
 The government counters that, in accepting the refiled claims and ruling on them, the Service did not regard the first set of disallowance notices as having been withdrawn. Instead, the IRS asserts that in processing the second set of claims it was simply reconsidering the earlier set of disallowances. As the Code provides that reconsideration by the Service of a previously disallowed claim does not interrupt the running of the limitations period,[4] the government contends that the claims are time-barred.
 
 
 21
 No statute or regulation addresses the question of how, if at all, the IRS may withdraw or cancel a previously issued statutory notice of disallowance. In some cases from other jurisdictions, courts have held that notices of disallowance may indeed be withdrawn and that, at least under certain circumstances, oral representations that withdrawal has taken place may suffice to prove that such is the case. Haber v. United States, 831 F.2d 1051, 1052-1053 (Fed.Cir.1987); Beardsley v. United States, 126 F.Supp. 775 (D.Conn.1954).
 
 
 22
 In this case, the district court apparently assumed arguendo that under some circumstances a statutory notice of disallowance may indeed be deemed to have been withdrawn by the IRS. However, the district court concluded that the facts of this case did not justify a conclusion that the original, January 16, 1986, statutory notices of disallowance had been withdrawn. As evidence that the Service had not merely agreed to reconsider the first set of disallowances, but actually had withdrawn them, appellants point to several features of the second round of claims. The thirty-day letters for the second claims were printed on the standard forms used for original claims, and not on the special forms that the IRM instructs[5] are to be used for reconsiderations. See IRM § 4516(4). Also, there was no reference in the thirty-day letters to the earlier filed claims or the earlier disallowances.
 
 
 23
 After considering this evidence, the district court held that
 
 
 24
 There was no erroneous action by the IRS nor was there any reasonable confusion on the part of the taxpayers as to the effect of the first notice of disallowance.
 
 
 25
 Opinion, 768 F.Supp. at 1525. Thus, the district court found that the original, January 16, 1986, statutory notices of disallowance were not in fact withdrawn. Moreover, the district court found that there was no reasonable confusion on the part of the taxpayers as to the effect of the original, January 16, 1986, statutory notices of disallowance. After careful consideration of all the circumstances of this case, we cannot conclude that these findings of fact are clearly erroneous. Thus, we assume arguendo, as did the district court, that a statutory notice of disallowance may indeed be withdrawn by the IRS; we hold only that in this case there was no withdrawal of the January 16, 1986, statutory notices of disallowance under the facts as found by the district court.
 
 III. CONCLUSION
 
 26
 For the foregoing reasons, we affirm the district court's findings that appellants' causes of action accrued on January 16, 1986, and that the two-year statute of limitations was not tolled. Accordingly, the judgment of the district court is
 
 
 27
 AFFIRMED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 [1]
 Under normal IRS procedure, when the Service decides to deny a claim, it first issues a preliminary notice of disallowance known as a "thirty-day letter." Treas.Reg. §§ 601.105(d), 601.105(e)(2) (1992). Thereafter, the claimant has thirty days within which to initiate an administrative appeal. If that right is foregone or if the appeal is denied, then a statutory notice of disallowance issues. Internal Revenue Manual ("IRM") § 4512.1(4). According to the IRM, there are only two circumstances under which the Service will dispense with the thirty-day letter and issue a statutory notice of disallowance directly: where a claim has been withdrawn by the claimant, or where the claim "is based solely on an issue that has been considered in previously examined returns of the claimant [and the] claimant requests in writing the immediate issuance of a statutory notice of claim disallowance." IRM §§ 4512.1(4), 4512.1(2)(f), (g). In this case, the decision by the Service to issue the statutory notices of disallowance immediately, thus foregoing the usual thirty-day letter and administrative appeal, apparently resulted from a misunderstanding between the IRS agent and appellants' counsel. See District Court Opinion 768 F.Supp. at 1524
 
 
 [2]
 This case from the old Fifth Circuit was decided prior to the close of business on September 30, 1981, and is binding precedent in the Eleventh Circuit under Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc)
 
 
 [3]
 It is true that the Service issued a second round of statutory notices of disallowance on August 10, 1988, and that these notices advised the taxpayers that they could file suit within two years. However, because the two-year statute of limitations which had commenced when the original January 16, 1986, notices were issued, had already expired, there could be no reasonable reliance on the August 10, 1988, notices
 
 
 [4]
 See 26 U.S.C. § 6532(a)(4) quoted supra
 
 
 [5]
 Appellants may invoke the Service's failure to follow the rules and procedures set out in the IRM governing reconsiderations of prior claims as evidence that the IRS was treating the original claims as having been withdrawn. Appellants may not, however, invoke that failure to comply with the IRM rules as grounds for automatically holding that the Service's treatment of the first disallowances could not validly have constituted a reconsideration and therefore must have been a withdrawal. The rules contained in the IRM have not been issued pursuant to the rulemaking procedures set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 553. It is true that courts may properly force agencies to follow even internal agency regulations issued without APA rulemaking where failure to enforce such regulations would adversely affect "[substantive] rights of individuals." Morton v. Ruiz, 415 U.S. 199, 232, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974). Where, however, such regulations do not appear to relate to rights accorded to individuals, but instead simply function as internal operating instructions, then they are deemed to be solely for in-house agency use and are not judicially enforceable against the agency. Schweiker v. Hansen, 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981)
 The IRS operating procedures contained in the IRM do not delineate substantive rights of individuals but instead simply establish intra-agency operating procedures. As such, they are a species of rule that is not judicially enforceable against the agency. Thus, though the Service's failure to comply with the IRM's claim reconsideration procedures does constitute evidence supporting the view that what in fact transpired was not a reconsideration but a withdrawal, that violation does not automatically render the purported reconsideration invalid, thereby transforming it into a de facto withdrawal.