**Robert G. ROSSER, Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant.**

No. 92–6926.

United States Court of Appeals, Eleventh Circuit.

Dec. 28, 1993.

Cynthia Lewis, Tax Div., U.S. Dept. of Justice, Washington, DC, Jack Selden, Caryl

Privett, George C. Batcheler, U.S. Attys., Birmingham, AL, Gary Allen, Tax Div., Robert L. Baker, Brian C. Griffin, Steven W. Parks, Ann B. Durney, Tax Dept., U.S. Dept. of Justice, Washington, DC, for defendant-appellant.

Thomas J. Mahoney, Jr., Birmingham, AL, for plaintiff-appellee.

Before ANDERSON and BLACK, Circuit Judges, and NANGLE *, Senior District Judge.

ANDERSON, Circuit Judge:

Taxpayer Robert G. Rosser ("Rosser") brought this action under 26 U.S.C. § 7422(a) for refund of allegedly overpaid federal income taxes. The United States (the "government") filed a motion for summary judgment, contending that the suit was barred by the applicable two-year statute of limitations laid out in 26 U.S.C. § 6532(a)(1). The district court denied the motion and, pursuant to a stipulation by the parties as to the relevant amount, entered judgment in favor of Rosser. The government now appeals from this judgment. For the reasons that follow, we reverse the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

Taxpayer Rosser timely filed his federal income tax returns for his 1979 through 1983 taxable years. On each of the returns, Rosser claimed charitable contribution deductions for donations of art objects to a museum. The Internal Revenue Service (the "IRS") disallowed portions of the charitable contribution deductions, and determined deficiencies in Rosser's tax liabilities for those years. Rosser paid the tax deficiencies for 1979, 1980, and 1981 on April 5, 1985, and paid those for 1982 and 1983 on December 30, 1986. Rosser later filed timely claims for refund of the contested amounts.

On January 5, 1988, the IRS mailed to Rosser by certified mail notices of disallowance of the tax refund claims for each of the taxable years 1979 through 1983. Rosser alleged in the district court that he never received these notices of disallowance, and submitted an affidavit to this effect.

On December 30, 1988, Rosser refiled his tax refund claims for 1979 through 1983. In response to the refiled claims for the 1982 and 1983 taxable years, the IRS on January 17, 1989 sent Rosser letters stating that it was "looking into the matter and will answer you more fully in 60 days." R1–6–Exhibits A and B. The letters also stated that Rosser should contact the IRS if he had any questions about the letters. In response to the refiled claims for the 1979, 1980, and 1981 taxable years, the IRS on January 23, 1989 mailed Rosser a notice of disallowance of these claims, explaining that the claims were not filed within the time period required by 26 U.S.C. § 6511. The notice also advised that Rosser should contact the IRS if he had any questions.

On January 18, 1991, Rosser filed this suit seeking refund of the contested amounts for his 1979 through 1983 taxable years. The government filed a motion for summary judgment, contending that Rosser's suit was barred by the statute of limitations for tax refund suits, 26 U.S.C. § 6532(a)(1), having been commenced more than two years after January 5, 1988, the date on which the IRS mailed Rosser notices of disallowance of the first set of tax refund claims. The government also contended that actions taken on the refiled refund claims did not extend the time for filing suit. The government submitted with its motion evidence that it had mailed Rosser notices of disallowance on January 5, 1988. Rosser responded by submitting an affidavit stating that he never received the notices of disallowance mailed on January 5, 1988 and by arguing that the statute of limitations does not begin to run on the date notices of disallowance were mailed unless the taxpayer receives the notices. He also argued that in deciding when

---

* Honorable John F. Nangle, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation.

to file suit, he reasonably relied on the January 17, 1989 letter and the second notice of disallowance which was mailed on January 23, 1989.

The district court denied the government's motion, finding that Rosser's suit was not time-barred. The parties then stipulated to the amount of the tax refund to Rosser, and the district court entered judgment for Rosser pursuant to the stipulation. The government now appeals.

## II.  DISCUSSION

■■■■ The doctrine of federal sovereign immunity provides that the United States may be forced to pay monetary relief only to the extent that Congress has expressly consented to the imposition of such liability. *United States v. Dalm,* 494 U.S. 596, 607, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990); *First Alabama Bank, N.A. v. United States,* 981 F.2d 1226, 1228 (11th Cir.1993). Congress may limit the scope of any waiver of sovereign immunity by attaching conditions to it. In 26 U.S.C. § 7422, Congress has authorized taxpayer suits against the government for refund of wrongly paid taxes. *See First Alabama,* 981 F.2d at 1228. However, the statute of limitations for instituting tax refund suits contained in 26 U.S.C. § 6532(a)(1) conditions this authorization, *see Dalm,* 494 U.S. at 607, 110 S.Ct. at 1368; *First Alabama,* 981 F.2d at 1228; consequently, any tax refund suit not brought in compliance with § 6532(a)(1) is barred.

### A.  *The Language of Section 6532(a)(1)*

Section 6532(a)(1) of Title 26 provides in pertinent part that "[n]o suit or proceeding ... for the recovery of any internal revenue tax ... shall be begun ... after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates." It is undisputed here that Rosser did not commence this tax refund suit within two years of the day the IRS mailed him, by certified mail, notices of disallowance of his tax refund claims for his 1979 through 1983 taxable years. The IRS mailed Rosser by certified

mail notices of disallowance of these claims on January 5, 1988, and Rosser did not file suit until January 18, 1991.

Rosser argues, however, and the district court held, that the § 6532(a)(1) statute of limitations does not begin to run on the date a notice of disallowance is mailed unless the taxpayer actually receives the notice of disallowance. The district court held that evidence of mailing only raises a rebuttable presumption of receipt, and that Rosser's affidavit stating that he had never received the notices of disallowance rebutted any inference of receipt arising from the government's production of evidence that it had mailed the notices on January 5, 1988. According to the district court, because Rosser did not receive the January 5, 1988 notices of disallowance, the statute of limitations did not begin to run on January 5, 1988. Rather, the district court held, the statute of limitations began to run on January 23, 1989, the date the IRS mailed Rosser a notice of disallowance of the refiled 1979, 1980, and 1981 refund claims, because the later disallowance notice was the only one Rosser received.

The government strongly disagrees with the position of Rosser and the district court. It argues that the plain language of § 6532(a)(1) provides that mailing of a notice of disallowance, by certified or registered mail, triggers the running of the two-year statute of limitations, regardless of whether the taxpayer actually receives such notice. Because this interpretation of § 6532(a)(1) is consistent with Congress' intent as reflected in the statute's legislative history, the government argues, we cannot ignore what appears to be the statute's plain meaning.

We agree with the government. We have recently held that, in construing federal statutes of limitations, "we are bound to apply the general rule that '[t]he plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" *United States v. Moore,* 968 F.2d 1099, 1101 (11th Cir.1992) (quoting *United States v. Ron Pair Enterprises,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)) (citation

and internal quotation marks omitted). Here, § 6532(a)(1) clearly states that no tax refund suit shall be brought "after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance" of the taxpayer's refund claim. The only reasonable interpretation of this language is that the statutory period for bringing suit begins to run from the date that the IRS mails, by certified or registered mail, a notice of disallowance to the taxpayer, regardless of whether the taxpayer actually receives the notice. Nothing in the statute suggests that mailing the notice of disallowance will trigger the statutory period only if the taxpayer actually receives that notice.[1]

Interpreting § 6532(a)(1) as not requiring actual receipt of a disallowance notice is quite consistent with the intent of the provision's drafters, as reflected in the provision's legislative history. Before § 6532 and its predecessors were enacted, Revised Statutes § 3226 provided that a tax refund suit could not be begun more than five years from the date the taxes were paid, "unless such suit is begun within two years after the disallowance" of the refund claim. *See* S.Rep. No. 665, 72d Cong., 1st Sess. 57 (1932). Under this provision, however, the "exact date of disallowance [wa]s sometimes difficult of ascertainment with the consequent uncertainty in such cases as to when the statute of limitations on suits begins to run." *Id.; see Carter v. Farmers Underwriters Ass'n,* 115 F.2d 302, 304 (9th Cir.1940), *cert. denied,* 312 U.S. 686, 61 S.Ct. 613, 85 L.Ed. 1124 (1941). In 1932, Congress amended the Internal Revenue Code to provide a definite date that triggered the statute of limitations for bringing tax refund suits. The Senate report accompanying enactment of the amendment explained that

> the best interests of all parties concerned will be served by an amendment which makes the date of disallowance of the claim absolutely certain in every case.... Accordingly, the bill requires the mailing of a notice of disallowance by registered mail,

and the bringing of a suit or proceeding within two years from the date of such mailing.

S.Rep. No. 665, *supra,* at 57 (1932). *See also* H.R.Conf.Rep. No. 1492, 72d Cong., 1st Sess. 28, *reprinted in* 1939–1 C.B. (Pt. 2) 539, 552 ("this amendment provides that the statute of limitations on bringing suit to recover internal-revenue taxes illegally collected shall be two years, such period to run from the date of mailing by registered mail by the Commissioner of a notice of the disallowance of the part of the claim to which the suit relates"); *Carter,* 115 F.2d at 304.[2] Thus, the legislative history of § 6532(a)(1) demonstrates that its purpose was to eliminate uncertainty about when the statute of limitations for tax refund actions begins to run. Reading § 6532(a)(1) as mandating that the statutory period begin to run in every case from the date of mailing a disallowance notice is perfectly consistent with this purpose. Conversely, reading into the statute an exception—that the limitations period does not begin to run on the date of mailing unless the taxpayer actually receives the notice—resurrects an uncertainty similar to the pre–1932 uncertainty regarding the trigger date of the limitations period in a way that is obviously inconsistent with the statute's purpose of eliminating such uncertainty. Thus, § 6532's legislative history provides no basis for disregarding the relatively clear meaning of the statute's language.

Furthermore, it would be impractical to require the IRS to prove in every case actual receipt of a disallowance notice in order for the limitations period to be triggered at the notice's mailing date. The only way for the IRS to prove actual receipt of a disallowance notice would be for it to mail the notice return receipt requested, a mailing method Congress did not require in the statute. Even if the IRS employed this mailing method, taxpayers who wished to delay the running of the limitations period could do so simply by denying receipt of their disallow-

---

1. The statute does not require that the IRS mail notices of disallowance return receipt requested.

2. In a later enactment, Congress amended § 6532 to provide that notices of disallowance could be sent by certified mail as well as registered mail.

ance notices. It would be very difficult for the IRS to disprove such claims.

■ Based on the plain language of the statute, its legislative history, and practical considerations, we hold that the two-year statute of limitations laid out in 26 U.S.C. § 6532(a)(1) begins to run in every case on the date the IRS mails the taxpayer a notice of disallowance, whether or not the taxpayer actually receives the notice.

## B. *Equitable Tolling*

In addition to holding that § 6532(a)(1) requires actual receipt by the taxpayer in order for the statute of limitations to be triggered on the disallowance notice's mailing date, the district court also held that, even had Rosser received the January 5, 1988 notices of disallowance, actions the IRS took on Rosser's refiled claims tolled the statute of limitations. According to the district court, the notice of disallowance the IRS sent Rosser, on January 23, 1989, in response to the refiled claims for 1979, 1980, and 1981, "stated on its face without reservation or condition that plaintiff had two years from [the date the second notice was mailed] to file suit." R1–10–6 (District Court Opinion). The district court cited several cases applying equitable estoppel against the government—*Southeast Bank of Orlando v. United States*, 676 F.2d 660, 661, 230 Ct.Cl. 277 (1982), *Heath v. United States*, 219 Ct.Cl. 582 (1979), and *Miller v. United States*, 500 F.2d 1007, 1008–09 (2d Cir.1974). *See* R1–10–5–7 (District Court Opinion). In each case, during the time that the two-year limitations period was already running, the IRS incorrectly informed the taxpayer, in writing, that the taxpayer had two years from the mailing date of a later disallowance notice in which to file suit.

■ The district court erred in relying on these cases. As Rosser concedes on appeal, the district court was mistaken in thinking

that the second notice of disallowance "stated on its face without reservation or condition that plaintiff had two years from [the date the second notice was mailed] to file suit." The January 23, 1989 notice contained no such language; nor did it contain any other language which could have misled Rosser. Thus, we cannot affirm the district court's application of equitable estoppel against the government based on the logic of *Southeast Bank, Heath,* and *Miller. See L & H Co., Inc. v. United States*, 963 F.2d 949, 952 (7th Cir.1992) (declining to apply equitable estoppel against government on the grounds that IRS sent second disallowance notice when second notice contained no language suggesting the taxpayer had two years from the date of the second notice in which to file suit).

Nor is there any other basis for affirming the district court's application of equitable estoppel against the government in this case. The only misleading conduct the district court found the IRS to have committed was its supposed inclusion in the second disallowance notice of language suggesting that Rosser had two years from the date of that notice to sue. As we have explained, however, the district court was simply mistaken in thinking that the second disallowance notice contained any such language. Furthermore, the district court identified no other misleading representations or conduct by the IRS from which Rosser could reasonably have concluded that he had two years from the second notice of disallowance in which to bring suit; nor does the record disclose any other actions which toll the statute of limitations.[3] Therefore, the district court erred in concluding that the government was equitably estopped from arguing that the statute of limitations ran from the date of the first disallowance notices, January 5, 1988.[4]

## III. CONCLUSION

Because we hold that 26 U.S.C. § 6532(a)(1)'s statute of limitations for tax

---

3. The January 17, 1989 letter from the IRS was a form letter acknowledging receipt of Rosser's refiled claims for refund for 1982 and 1983, and merely said the IRS would look into the matter. The January 17, 1989 letter does not toll the statute of limitations.

4. Because we conclude there is no equitable estoppel on these facts, we merely assume *arguendo,* with no need to decide, that the statute of limitations governing tax refund suits, 26 U.S.C. § 6532(a)(1), may under some circumstances be equitably tolled. *First Alabama*, 981 F.2d at 1228.

refund actions runs from the mailing date of the notice of disallowance regardless of whether the taxpayer actually received such notice, and because there is no basis here for equitable tolling, we hold that Rosser's suit was barred because it was brought more than two years after January 5, 1988, the date the IRS mailed him the first notices of disallowance. Therefore, we reverse the judgment of the district court.

REVERSED.