Ethel FINKELSTEIN, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civil Action No. 96–744 (AJL).

United States District Court,
D. New Jersey.

Sept. 9, 1996.

Stuart A. Foreman, New York City, Lewis Reicher, Teaneck, NJ, for Plaintiff.

Susan C. Cassell, Assistant United States Attorney, Newark, NJ, Jonathon Jackel, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for U.S.

**LECHNER, District Judge.**

This is an action brought by plaintiff Ethel Finkelstein ("Ethel Finkelstein") against the United States of America (the "Government") seeking to recover the sum of $212,-945.24 tendered to the Internal Revenue Service (the "I.R.S.") as a deposit in the nature of a cash bond to stop the running of interest and penalties on a potential payroll tax liability. Jurisdiction is alleged pursuant to 28 U.S.C. § 1346(a)(1). Currently before the court is a motion for summary judgment filed by the Government ("Government Motion for Summary Judgment").[1] For the reasons stated below, the Government Motion for Summary Judgment is granted.

*Facts*

A. *Background*

Ethel Finkelstein ("Ethel Finkelstein") resides at 431 East Palisades Avenue in Englewood, New Jersey. Complaint at ¶ 1. Ethel Finkelstein is married to Jerome Finkelstein ("Jerome Finkelstein"). Finkelstein Affidavit at ¶ 4. Through and including 1981, Ethel Finkelstein and Jerome Finkelstein employed Aaron Goodman ("Goodman") as their tax advisor and accountant.[2] Finkelstein Affidavit at ¶ 4. During that period, Goodman prepared and filed joint tax returns for Ethel Finkelstein and Jerome Finkelstein. Finkelstein Affidavit at ¶ 4. Also during that period, Jerome Finkelstein operated a business known as the European Tailoring Group, Inc. (the "European Tailoring Group"). Opposition Brief at 2. Jerome Finkelstein was a responsible party for the payment of outstanding taxes of European Tailoring Group. Opposition Brief at 2. Goodman continued to represent Ethel Finkelstein as her accountant and tax advisor until 1988.[3] Finkelstein Affidavit at ¶ 3.

---

1. In support of the Motion, the Government submitted: Memorandum of Law in Support of Defendant's Motion for Summary Judgment, with an attached copy of Revenue Procedure 84–58, 1984–2 C.B. 501 ("Government Brief"); Reply Memorandum in Support of Defendant's Motion for Summary Judgment ("Reply Brief").

   In opposition to the Motion, Finkelstein submitted: Memorandum of Law ("Opposition Brief"); Affidavit of Ethel Finkelstein in Opposition to Motion for Summary Judgment ("Finkelstein Affidavit").

2. The record is silent as to when Goodman commenced employment for Ethel Finkelstein and Jerome Finkelstein.

3. The Record is unclear as to whether Goodman ceased to represent Jerome Finkelstein. The Complaint states that the I.R.S. "erroneously computed the amount of tax due against Mr.

## B. *The Tax Liability*

Ethel Finkelstein alleges she became aware in 1987 that Jerome Finkelstein had a potential tax liability with respect to withholding payroll taxes (the "Payroll Tax Liability") at his business, the European Tailoring Group. Finkelstein Affidavit at ¶ 5. Ethel Finkelstein was concerned she might also be liable for the Payroll Tax Liability based on two facts. Finkelstein Affidavit at ¶ 5. First, Ethel Finkelstein had filed joint returns with her husband and believed those joint returns would make her liable. Finkelstein Affidavit at ¶ 5(a). Second, a search warrant with respect to the Payroll Tax Liability was directed toward the European Tailoring Group, Jerome Finkelstein and herself.[4] Finkelstein Affidavit at ¶ 5(b). Ethel Finkelstein also alleges Goodman advised her she might be liable for the tax liability.[5] Finkelstein Affidavit at ¶ 6.

Pursuant to Goodman's advice, Ethel Finkelstein delivered to Goodman on or about 5 May 1988 a bank check (the "Bank Check") in the amount of $212,945.25 payable to the I.R.S.[6] Finkelstein Affidavit at ¶ 10; Complaint at Exhibit A. Ethel Finkelstein alleges Goodman advised her that the Bank Check would be sent to the I.R.S. with a cover letter (the "5 May 1988 Letter") explaining that the Bank Check would be held as a payment of principal only and would be returned to Ethel Finkelstein in the event that no tax liability against her was found.[7] Finkelstein Affidavit at ¶ 11; Complaint at Exhibit B. Ethel Finkelstein stated that the 5 May 1988 Letter also provided any unused portion of the Bank Check should be returned to Ethel Finkelstein.[8] Finkelstein Affidavit at ¶ 11.

In January 1989, Goodman notified Ethel Finkelstein she was not responsible for any of the Payroll Tax Liability.[9] Finkelstein Affidavit at ¶ 16. Goodman then advised Ethel Finkelstein to make a demand claim for a refund. Finkelstein Affidavit at 17. On 15 February 1989, Ethel Finkelstein demanded a refund of the Bank Check or its equivalent value (the "15 February 1989 Demand Letter").[10] Finkelstein Affidavit at ¶ 18; Complaint at ¶ 9; Complaint at Exhibit C. On or about 16 June 1989, the I.R.S.

Finkelstein, which error was noted by the Parole Board and acted upon by a reduction in the amount of sentence as provided by the applicable sentencing guidelines." Complaint at ¶ 12. This paragraph suggests that Jerome Finkelstein was incarcerated during this period for tax evasion of some kind.

4. The record is vague regarding the circumstances surrounding the search warrant. The *Finkelstein Affidavit merely states that "a search warrant authorized by a Magistrate of this Court was directed to European Tailoring Group, my husband and myself* in respect to these taxes." Finkelstein Affidavit at ¶ 5 (emphasis in original). Ethel Finkelstein did not submit a copy of the search warrant nor did she provide any further description of the search warrant.

5. The record is silent on when or why Goodman advised Ethel Finkelstein of her potential Payroll Tax Liability.

6. On the back of the Bank Check is the following restriction:
*This Check is Restricted as Follows:*
This is a cash bond to be applied to the payment of principal only as per the letter of transmittal conditions contained therein, accompanying this check.
*Id.*

7. The 5 May 1988 Letter states, in pertinent part:

Pursuant to Section 4.02 of *Rev.Proc. 84–58,* 1984–C.B. 50, I herewith remit on behalf of our client, Jerome Finkelstein ... a check representing borrowed funds in the amount of *$212,945.25* drawn to the Internal Revenue Service.
In this connection, our client designates this remittance as a *"deposit in the nature of a cash bond to be applied to the payment of principal only."* This cash bond relates solely to Mr. *Finkelstein's own possible liability for the payment* of payroll taxes relating to the above Employer Identification # 22–2343635 and should be allocated as follows....
If as a final determination there exists a surplus of funds from this tender, in that event, a refund be made forthwith and remitted to the lender Ethel Finkelstein....
*Id.* (emphasis in original).

8. In fact, the 5 May 1988 Letter only provided for a refund to Ethel Finkelstein in the event of any surplus from the Bank Check. *See* 5 May 1988 Letter.

9. The record is silent on how Goodman learned that Ethel Finkelstein was not liable for the Payroll Tax Liability.

10. The 15 February 1989 Demand Letter is signed by Goodman. The letter indicates that Goodman had power of attorney.

advised Goodman that the Bank Check would be applied to the personal income tax liability (the "Personal Income Tax Liability") of Jerome Finkelstein (the "Notice of Disallowance")[11]. Finkelstein Affidavit at ¶ 19; Opposition Brief at 3.

Ethel Finkelstein alleges the Notice of Disallowance of the I.R.S. did not comply with proper procedure as it was not sent by certified or registered mail. Finkelstein Affidavit at ¶ 20. On 2 November 1990, Ethel Finkelstein filed Form 843 restating her claim (the "Form 843 Claim"). Complaint at ¶ 16 and Exhibit D. Ethel Finkelstein filed her Complaint on 14 February 1996. Complaint at 1.

### Discussion

#### A. Standard of Review for Summary Judgment Motions

To prevail on a motion for summary judgment, the moving party must establish "there is no genuine issue as to any material fact and that [she] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The present task is to determine whether genuine issues of material fact exist and whether the Government is entitled to judgment as a matter of law. A district court may not resolve factual disputes in a motion for summary judgment. *Linan–Faye Constr. Co. v. Housing Auth.*, 49 F.3d 915, 926–27 (3d Cir. 1995) ("at the summary judgment stage, 'the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial' ") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)); *Desvi, Inc. v. Continental Ins. Co.*, 968 F.2d 307, 308 (3d Cir.1992) ("threshold inquiry is whether there are 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party' ") (citations omitted).

In considering a motion for summary judgment, all evidence submitted must be viewed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Healey v. Southwood Psychiatric Hosp.*, 78 F.3d 128, 130–31 (3d Cir.1996); *General Ceramics Inc. v. Firemen's Fund Ins. Cos.*, 66 F.3d 647, 651 (3d Cir.1995); *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983) (the court must resolve "all inferences, doubts and issues of credibility ... against the moving party"), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984).

When the resolution of issues depends wholly upon the interpretation of specific statutory language and the applicable law, summary judgment is appropriate. *See DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719, 724 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995); *see also Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.) ("summary judgment is proper where the facts are undisputed"), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985); *Estate of Reddert,* 925 F.Supp. 261, 265 (D.N.J.1996).

In addition, when the nonmoving party bears the burden of proof at trial, the moving party is entitled to summary judgment by showing "there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553. Once the movant demonstrates an essential element of the nonmovant's case is lacking, the nonmovant must come forward with sufficient evidence to demonstrate there is a factual controversy as to that element. *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2509; *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1130–31 (3d Cir.1995); *Witco,* 38 F.3d at 686. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355 (nonmovant must "do more than simply

---

**11.** Ethel Finkelstein alleges Goodman "advised [her] in or about June 1989 [that] the Internal Revenue Service responded to his letter advising him that the Internal Revenue Service would apply the Check to [Jerome Finkelstein's] personal income taxes." Finkelstein Affidavit at ¶ 19. Ethel Finkelstein did not include a copy of the Notice of Disallowance with her submissions.

show that there is some metaphysical doubt as to the material facts"); *accord Siegel*, 54 F.3d at 1130–31; *Nevets C.M., Inc. v. Nissho Iwai Am. Corp.*, 726 F.Supp. 525, 534 (D.N.J. 1989), *aff'd without Op'n*, 899 F.2d 1218 (3d Cir.1990).

If the nonmovant fails to make a sufficient showing regarding an essential element of its case upon which it will bear the ultimate burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted. *Celotex*, 477 U.S. at 321, 106 S.Ct. at 2552; *Siegel*, 54 F.3d at 1130–31; *see also Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir.1993) ("[s]ummary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant").

The dispute between the parties in the present case rests upon the threshold determination of whether the action is barred by the statute of limitations.[12] The Government contends that the claim is barred by the statutes of limitations found in 28 U.S.C. § 2401(a)[13] and 26 U.S.C. § 6532(a)(1).[14] Ethel Finkelstein counters the claim is not barred by the statute of limitations found in 26 U.S.C. § 6532(a) because the I.R.S. did not send the Notice of Disallowance by certified or registered mail as required by the rule.[15]

■ The resolution of issues in this case depends wholly upon the interpretation of statutory language and the applicable law. Because there are no genuine issues of material fact, the case is appropriate for summary judgment analysis. *See DiBiase*, 48 F.3d at 724; *Gans*, 762 F.2d at 341 ("summary judgment proper where facts are undisputed"); *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 439 (3d Cir.1982); *Estate of Reddert*, 925 F.Supp. at 265; *see also Crain v. Board of Police Comm'rs of Metro. Police Dep't*, 920 F.2d 1402, 1405–06 (8th Cir.1990) ("when unresolved issues are primarily legal rather than factual, summary judgement is particularly appropriate").

## B. Statute of Limitations Analysis

### 1. Internal Revenue Code

■ The parties are in disagreement as to whether Ethel Finkelstein filed her suit within the statute of limitations found in 26 U.S.C. § 6532(a).[16] The statute states that any suit for the recovery of any internal revenue tax, penalty or other sum must be filed within two years after the refund claim is disallowed. 26 U.S.C. § 6532(a)(1). It is undisputed in the present case that Ethel

---

12. Because this action is ultimately barred by the statute of limitations, the alternative arguments addressed in the Moving Brief, Opposition Brief or Reply Brief are moot. These arguments center around the interpretation of Revenue Procedure 84–58, 1984–2, C.B. 501 and whether the I.R.S. was bound to the restrictions set forth in the 5 May 1988 Letter.

13. This section states, in pertinent part:
    ... every civil action against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.
    28 U.S.C. § 2401(a).

14. This section states, in pertinent part:
    (n)o suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of a disallowance of the part of the claim to which the suit or proceeding relates.
    26 U.S.C. § 6532(a)(1).

15. Ethel Finkelstein does not address the 28 U.S.C. § 2401(a) statute of limitations in her Opposition Brief.

16. The statute of limitations found in 26 U.S.C. § 6511 is not applicable in the instant case because Ethel Finkelstein is not claiming a refund for the overpayment of a tax for which she was required to file a return. *See* 26 U.S.C. § 6511(a). Rather, Ethel Finkelstein seeks a refund for a deposit in the nature of a cash bond that she *voluntarily* paid on behalf of Jerome Finkelstein, the taxpayer. When a remittance is not in the nature of a payment of a tax, but rather is a deposit in the nature of a cash bond, formal refund procedures do not apply. *See* Rev. Proc. 84–58 at § 4.02; *see also* Mark Aquillo, *Payments vs. Deposit: Make Sure Tax Deposits Are Not Payments*, 54 Tax'n for Acct 89 (Feb. 1995). Neither party addressed § 6511(a).

Finkelstein did not commence this tax refund suit within two years of receiving the Notice of Disallowance of her tax refund claim. Ethel Finkelstein admits that Goodman, who held power of attorney pursuant to the 15 February 1989 Demand Letter, received the Notice of Disallowance sent by the I.R.S. on or about 16 June 1989. Ethel Finkelstein Affidavit at ¶ 19; Opposition Brief at 3. Ethel Finkelstein also admits Goodman informed her of the Notice of Disallowance in June 1989. Finkelstein Affidavit at ¶ 19. The Complaint was filed 14 February 1996. Complaint at 1. As the Government Brief indicates, the filing of the Complaint occurred six years and 213 days after the I.R.S. informed Ethel Finkelstein that the Bank Check would not be returned and would be applied to Jerome Finkelstein's Personal Income Tax Liability. Government Brief at 8–9; Ethel Finkelstein Affidavit at ¶ 19.

Ethel Finkelstein argues that the Notice of Disallowance was ineffective because it was not sent by certified mail or registered mail, as required by 26 U.S.C. § 6532(a). Opposition Brief at 4. Ethel Finkelstein contends "[t]he failure to comply with the code deems the government's June 16 letter as non-responsive." *Id.* Ethel Finkelstein cites *Nash v. United States,* 58 F.R.D. 68 (D.Neb.1972) and *Daniel v. United States,* 454 F.2d 1166 (6th Cir.), *cert. denied,* 409 U.S. 843, 93 S.Ct. 42, 34 L.Ed.2d 82 (1972), in support of her argument. Each case is distinguishable from the instant matter.

In *Nash,* the plaintiff did not admit to receiving *actual* notice of the disallowance mailed on 9 May 1968. *Nash,* 58 F.R.D. at 68. The I.R.S. asserted that such notice was mailed by certified mail, however no receipts were produced to support that assertion. The court held that whether the notice of disallowance was mailed by certified or registered mail to start the running of the limitations period was a genuine issue of material fact which precluded summary judgment. *Id.* at 69.

In *Daniel,* the Government produced stamped receipts indicating that the notice of disallowance had been mailed on a certain date. *Daniel,* 454 F.2d at 1166. The Sixth Circuit held that this evidence was sufficient

for the district court to find that the notice of disallowance was mailed triggering the statute of limitations. *Id.*

In a comparable case, the Eleventh Circuit explained that the statute of limitations in § 6532(a)(1) begins to run from the date that the I.R.S. mails the notice of disallowance by certified or registered mail, regardless of whether the taxpayer actually receives it. *Rosser v. United States,* 9 F.3d 1519, 1522 (11th Cir.1993). The court cited the impracticality of requiring the I.R.S. to prove actual receipt, but indicated that the rule allowing the I.R.S. to mail the notice by registered or certified mail serves as a tool for the presumption of receipt. *Id.* Otherwise, the "taxpayer who wished to delay the running of the statute could do so simply by denying receipt of the disallowance." *Id.* at 1522–23.

In the instant case, Ethel Finkelstein admits Goodman received the Notice of Disallowance on or about 16 June 1989. Finkelstein Affidavit at ¶ 19. Goodman advised Ethel Finkelstein of the Notice of Disallowance in June 1989. Finkelstein Affidavit at ¶ 19. Accordingly, there is no need for return receipts to prove that the Notice of Disallowance was mailed.

■ The requirement of notice by certified mail or registered mail in § 6532 may be characterized as a protective measure for the I.R.S. to use to prove that the Notice of Disallowance was indeed mailed. The fact that the Notice of Disallowance may not have been mailed by certified or registered mail is of no moment in this case. Ethel Finkelstein's actual receipt proves that the Notice of Disallowance was delivered. *See Fellouzis v. United States,* No. 91–1251–CIV–T–21C, 1994 WL 782232, at *4 (M.D.Fla. Nov. 8, 1994) ("whether the notices were sent by certified mail, registered mail, or by some other means [under § 6532(a)(4) ] is not a material issue when the existence of the notice in the hands of the Plaintiffs is not in dispute, and there is no dispute concerning the date of the mailing of the notice"). *Cf. Balkissoon v. Comm'r of Internal Revenue.,* 995 F.2d 525, 528 (4th Cir.), *cert. denied,* 510 U.S. 978, 114 S.Ct. 473, 126 L.Ed.2d 424 (1993) ("[I.R.S.] Commissioner's failure to comply with the authorization in section

6212(a) inviting the use of registered or certified mail proves to be a technical, but harmless violation"); *Berger v. Comm'r of Internal Revenue*, 404 F.2d 668, 673 (3d Cir.1968), *cert. denied*, 395 U.S. 905, 89 S.Ct. 1744, 23 L.Ed.2d 218 (1969) (section 6212(a) authorization that notice of deficiency be sent by registered or certified mail does not forbid any other method of notice). *See also Circo Resorts, Inc. v. United States*, 80–1 U.S.T.C. ¶ 9380, 1980 WL 99750 (Ct.Cl.1980); *Jackson v. United States*, 60–2 U.S.T.C. ¶ 9531, 1960 WL 12303 (N.D.Ga.1960).

▮ In the case *sub judice*, the fact that the Notice of Disallowance was not sent by certified mail is not material. Ethel Finkelstein received the Notice of Disallowance and therefore had actual notice of the disallowance in June 1989. Ethel Finkelstein offers no explanation of why she waited until February 1996 to file her suit. Because the various limitations sections in the Internal Revenue Code allow for suits against a sovereign, their requirements are jurisdictional. *See, e.g., Commissioner of Internal Revenue v. Lundy*, —— U.S. ——, ——, 116 S.Ct. 647, 649, 133 L.Ed.2d 611 (1996) (holding that Tax Court lacks jurisdiction after expiration of the 2–year look-back period set forth in § 6512(b)(3)(B)); *United States v. Dalm*, 494 U.S. 596, 601–02, 110 S.Ct. 1361, 1364–65, 108 L.Ed.2d 548 (1990) (District Court lacked jurisdiction long after the limitations period under §§ 6511(a) and 7422(a)); *Koss v. United States*, 69 F.3d 705, 707 (3d Cir.1995) (addressing jurisdictional nature of 26 U.S.C. § 6511); *Qureshi v. United States Internal Revenue Service*, 75 F.3d 494, 497 (9th Cir. 1996); *Mutual Assurance, Inc. v. United States*, 56 F.3d 1353, 1355 (11th Cir.1995); *Angle v. United States*, 996 F.2d 252, 253 (10th Cir.1993); *Williams v. United States*, 947 F.2d 37, 39 (2d Cir.1991), *cert. denied*, 504 U.S. 942, 112 S.Ct. 2277, 119 L.Ed.2d 203 (1992); *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir.1990); *Dalton v. United States*, 800 F.2d 1316, 1319 (4th Cir.

1986); *cert. denied sub nom.*, 481 U.S. 1024, 107 S.Ct. 1911, 95 L.Ed.2d 516 (1987); *Johnson v. United States*, 81–1 U.S.T.C. ¶ 9298, 1980 WL 4730 (6th Cir.1981); *Daniel*, 454 F.2d at 1167 (6th Cir.1972); *Stevens v. United States*, 859 F.Supp. 1110, 1112 (W.D.Mich. 1994). Accordingly, Ethel Finkelstein's claim for the refund is barred by the statute of limitations. Summary judgment is granted in favor of the Government.

*2. General Statute of Limitations*

▮ The Government further argues that the suit is barred by the general statute of limitations found in 28 U.S.C. § 2401(a). That section, which governs actions against the United States, provides that "every civil action shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). A specific requirement of statute of limitations for actions against the United States, however, will prevail over the general limitations requirement of § 2401(a). *See Gordon v. United States*, 649 F.2d 837, 844, 227 Ct.Cl. 328 (Ct.Cl.1981) ("(I)n seeking a refund of taxes . . . a taxpayer must ascribe to the period of limitations established by I.R.C. ss 6511(a) and 6532(a) rather than the 6 year period of 28 U.S.C. ss 2501 and 2401"); *see also United States v. A.S. Kreider Co.*, 313 U.S. 443, 447, 61 S.Ct. 1007, 1010, 85 L.Ed. 1447 (1940) (regarding tax refund claim); [17] *United Sand and Gravel Contractors, Inc. v. United States*, 624 F.2d 733, 738 (5th Cir.1980) (regarding wrongful levy action); *Myszkowski v. United States*, 553 F.Supp. 66 (D.C.Ill. 1982) (regarding tort claim).

The Supreme Court held that the claim for a tax refund was governed by the shorter period of limitations, rather than the general six year statute of limitations. *United States v. A.S. Kreider*, 313 U.S. at 447, 61 S.Ct. at 1009. The Court stated that the general statute of limitations "was intended merely to place an outside limit" on a suit against the

---

17. The statutes analyzed in *A.S. Kreider Co.* were § 40(20) of Title 28, which is now sections 1346, 2401 and 2402 of Title 28, and Section 1113(a) of the Revenue Act of 1926 which, similar to the current section 6532(a), provided that "(n)o [suit or proceeding for the recovery of any internal revenue tax alleged to be erroneously or illegally

assessed or collected] shall be begun . . . after the expiration of five years from the date of such tax . . . unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates." *A.S. Kreider Co.*, 313 U.S. at 446, 61 S.Ct. at 1009.

United States. *Id.* The six year limitation period, then, is an outside limit consistent with, but secondary to, the two year limitation period governing a tax refund.

The Government argues that in the event the two year limitation period has not run due to the failure of the I.R.S. to mail the Notice of Disallowance by registered or certified mail, the six year statute of limitations governs. Government Brief at 14. The Government asserts that Ethel Finkelstein's action is barred because it was not "filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). The Government contends that the right of action first accrued either when the I.R.S. "rendered a decision" pursuant to the Notice of Disallowance, or six months after the claim for refund was made to the I.R.S. Government Brief at 9; 26 U.S.C. § 6532(a).

■ In the absence of a specific limitations period, the general statute of limitations period in 28 U.S.C. § 2401 applies. If 26 U.S.C. § 6532 fails due to the lack of certified or registered mailing, 28 U.S.C. § 2401(a) acts as a secondary limitation period barring this action. Section 6532(a) of Title 26 denotes when a tax refund suit first accrues by stating that a suit may not be begun before the expiration of six months from the date of filing the claim unless the Secretary renders a decision thereon within that time. 26 U.S.C. § 6532(a). The action in the instant case could have accrued either in August 1989, six months after Ethel Finkelstein authorized the 15 February 1989 Demand Letter for the Bank Check, or on 16 June 1989, when Ethel Finkelstein acquired actual notice of the Notice of Disallowance. The Complaint was filed on 14 February 1996. In either case, more than six years has passed since accrual of the action and, therefore, the action is barred. Summary judgment is granted to the Government.[18]

*Conclusion*

For the reasons stated, the Government Motion for Summary Judgment is granted.

---

**18.** Finkelstein's submission of her Form 843 Claim on 2 November 1990 does not affect the outcome under either the specific or general statute of limitations analysis. "A taxpayer may not enlarge Section 6532's two-year statute of limitations by refiling what is essentially the same claim...." *L & H Co., Inc. v. United States,* 963 F.2d 949 (7th Cir.1992) (citing *Stratmore v. United States,* 463 F.2d 1195 (3d Cir. 1972)); *First Alabama Bank, N.A. v. United States,* 768 F.Supp. 1522 (S.D.Ala.1991), *affirmed* 981 F.2d 1226 (1993).