UNITED STATES of America,
Plaintiff,

v.

DOMINO SUGAR CORPORATION,
Defendant.

No. 97 Civ. 9113 RMB.

United States District Court,
S.D. New York.

Sept. 14, 1999.

*DECISION AND ORDER*

BERMAN, District Judge.

Plaintiff, the United States of America ("Government"), filed this action on or about December 10, 1997 to recover a $1,526,100.60 interest payment it erroneously made to defendant, Domino Sugar Corporation ("Domino"), [1] on or about September 24, 1993. Domino seeks to dismiss the complaint, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6), asserting that the Government's claim for recovery was made too late and is, therefore, barred by the (two year) statute of limitations set forth in 26 U.S.C. § 6532(b).

**For the reasons set forth below, Domino's motion to dismiss is denied.**

*Background*

The following facts, which are set forth in the Government's complaint, are taken to be true for the purposes of this motion. In 1990, the Internal Revenue Service ("IRS") audited Domino for the tax period ended August 16, 1989. (Compl.¶ 16). Among other things, the IRS reviewed Domino's August 1989 tax return and proposed an adjustment relating to an $18,009,489.00 net operating loss carryforwards that Domino claimed as a deduction on its return. (Compl.¶ 17). In December 1990, Domino agreed in writing to the IRS' proposed adjustment. (Compl.¶ 18).

On December 14, 1990, Domino sent the IRS a letter concerning the proposed adjustment and enclosing a remittance of $6,497,710.00 ("December 1990 remittance"). (Compl.¶ 19). In its letter, Domino stated that the remittance was for an (anticipated) deficiency in tax, plus interest,

---

1. At the time of the events described herein, Domino was known as Amstar Sugar Corporation. To avoid confusion, the Court will refer to the company as Domino.

resulting from the IRS' adjustment.[2] (Compl.¶ 20). Domino's letter also stated that "[w]e respectfully request that this deposit be identified as a **cash bond** in your records." (Compl.¶ 22)(emphasis added). Pursuant to Revenue Procedure 84–58, 1984–2 C.B. 501, § 5.04, Domino's remittance had the effect of stopping interest from accruing on any tax deficiency assessment. (Compl.¶ 21).

On December 14, 1990, in accordance with Domino's instructions, the IRS prepared a Payment Posting Voucher, which identified the remittance as a "cash bond" and indicated that a Form 316(c), which advises that the IRS will accept the remittance as a cash bond, should be sent to Domino. (Compl.¶ 23). In the final Payment Posting Voucher, however, the IRS coded the remittance as a "subsequent payment." (Compl.¶ 24).

In September 1993, at the conclusion of its audit, the IRS determined that, as a result of other adjustments in Domino's favor, Domino's correct tax liability for the period at issue was less than the amount originally shown in Domino's tax return and, consequently, also less than the approximately $10 million tax payment that Domino had made when it filed its return. (Compl.¶ 25). The IRS concluded that Domino had overpaid its taxes by $173,336.00. (Compl.¶¶ 25, 28). In calculating Domino's correct tax liability (and overpayment), the IRS did not take into account Domino's December 1990 remittance. (Compl.¶ 26).

On September 24, 1993, the IRS sent Domino $8,240,206.34 including: (i) the $173,336.00 refund (minus $7,956.61 which was credited to other tax liabilities owed by Domino), together with interest in the amount of $51,016.35; and (ii) the December 1990 remittance (i.e., $6,497,710.00) together with interest thereon in the amount (at issue here) of $1,526,100.60. (Compl.¶¶ 30–31).

Revenue Procedure 84–58, 1984–2, C.B. 501, § 5.04 provides that a taxpayer who makes a deposit payment to the IRS in the nature of a cash bond is not entitled to receive interest on the deposit in the event that the IRS returns the cash bond to the taxpayer.[3] (Compl.¶ 32). The $1,526,100.60 interest payment that the IRS made to Domino on the December 1990 remittance was a mistake, i.e., the result of a processing error. (Compl.¶ 33).

On February 21, 1996, the IRS sent Domino a letter requesting the return of the $1,526,100.60 interest payment. (Compl.¶ 35). By letter dated March 14, 1996, Domino advised the IRS that it would not return the $1,526,100.60.[4] (Compl.¶ 36). The Government filed this action on or about December 10, 1997.

*Motion to Dismiss Standard*

In resolving a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of plaintiff. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the

---

**2.** Domino's letter dated December 14, 1990, described the $6,497,710.00 as "in payment of the deficiency in tax."

**3.** A deposit/cash bond may be recovered by the taxpayer upon demand at any time prior to assessment of tax by the IRS. *See* Rev. Proc. 84–58, § 4.02, 1984–2 C.B. 502 ("[t]he taxpayer may request the return of all or part of the deposit at any time before the Service is entitled to assess the tax. That amount will be returned to the taxpayer, without interest . . .").

**4.** Domino's letter dated March 14, 1996 did not dispute that its December 1990 remittance was a cash bond.

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In other words, the burden upon the movant is substantial as the issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.' " *Gant v. Wallingford Board of Education,* 69 F.3d 669, 673 (2d Cir.1995)(quoting *Weisman v. LeLandais,* 532 F.2d 308, 311 (2d Cir.1976)(per curiam)). However, while " 'the well-pleaded material allegations of the complaint are taken as admitted ... conclusions of law or unwarranted deductions of fact are not admitted.' " *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994), *cert. denied,* 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995) (citations omitted).

### Discussion

"The Government by appropriate action can recover can recover funds which its agents have wrongfully, erroneously, or illegally paid. 'No statute is necessary to authorize the United States to sue in such a case. The right to sue is independent of statute.' " *United States v. Wurts,* 303 U.S. 414, 415, 58 S.Ct. 637, 82 L.Ed. 932 (1938) (citation omitted). The United States Supreme Court has ruled that "[o]rdinarily, recovery of Government funds, paid by mistake to one having no just right to keep the funds, is not barred by the passage of

time." *Id.* at 416, 58 S.Ct. 637 (citation omitted). *See also United States v. Hawk Contracting, Inc.,* 649 F.Supp. 1, 2 (W.D.Pa.1985)("[t]his rule is intended to preserve 'the public's rights, revenues, and property from injury and loss' due to the negligence of agents of the government") (citation omitted). Moreover, "[t]he Government's right to recover funds, from a person who received them by mistake and without right, is not barred unless Congress has 'clearly manifested its intention' to raise a statutory barrier." *Wurts,* 303 U.S. at 416, 58 S.Ct. 637 (citation omitted).

Against this backdrop of law and public policy, Domino argues that the Government is not (even) entitled to its day in court. That is, according to Domino, "[t]he only issue before the Court on this motion is whether the two-year limitation in 26 U.S.C. § 6532(b) on suits to recover erroneous tax refunds applies in this case." (Reply Br. at 1). The Court disagrees and believes it is appropriate to further develop the record. Section 6532(b) provides as follows:

(b) Suits by United States for recovery of erroneous f erroneous refunds.—Recovery of an erroneous refund by suit under section 7405 [5] shall be allowed only if such suit is begun within 2 years after the making of such refund, except that such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact.

(b) Refunds otherwise erroneous.—Any portion of a tax imposed by this title which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514) may be recovered by civil action brought in the name of the United States.

---

5. Section 7405 provides, in relevant part, that:
(a) Refunds after limitation period.—Any portion of a tax imposed by this title, refund of which is erroneously made, within the meaning of section 6514, may be recovered by civil action brought in the name of the United States.

Domino contends that § 6532(b) manifests Congressional intent to raise a statutory barrier to the Government's right to recover the funds at issue here. (Moving Br. at 3–5)(Reply Br. at 3–4).[6] In the instant case, Domino contends that because the IRS sent Domino a payment on September 24, 1993, but did not commence litigation to recover (a portion of) that payment until December 1997, the Government has run afoul of the two year limitations period set forth in § 6532(b). (Moving Br. at 4–5).

The Government's position is that the two year limitations period in § 6532(b) does not apply here because Domino's December 1990 remittance to the IRS of $6,497,710.00 was a "deposit in the nature of a cash bond" rather than a "payment of tax." The Government argues that there are no statutory barriers to suits to recover interest mistakenly paid on cash bonds. (Opp. Br. at 8). "Since there is no statutory barrier precluding the Government from recovering the interest paid on Domino's remittance, the Government submits that, under the federal common law, and pursuant to 28 U.S.C. § 2415,[7] this suit is timely." (Opp. Br. at 8–9).

As noted, § 6532(b) also provides a five year statute of limitations "if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact." Here, the Government's action is within the five year period, although it does not appear from the record whether this provision is being relied upon by the Government.

Domino asserts that whether its' December 1990 remittance was a "deposit in the nature of a cash bond" or a "payment of tax" is irrelevant. "The question under § 6532(b) and its companion jurisdictional statute, 26 U.S.C. § 7405, is not how the taxpayer gave the money to the I.R.S., but whether, when the I.R.S. returned the money to Domino, it made a tax refund within the meaning of the statute." (Reply Br. at 1).

The Court disagrees with Domino's assertion that the nature of Domino's December 1990 remittance is legally irrelevant. While the Court is not aware of cases directly on point with the instant matter, in cases where taxpayers have sought to recover remittances to the IRS, courts have drawn a distinction for statute of limitations purposes between a deposit/cash bond and a payment of tax. *See, e.g., Ertman v. United States,* 972 F.Supp. 706, 707 (D.Conn.1997), *aff'd,* 165 F.3d 204 (2d Cir.1999) (" '[p]ayments' are subject to the statute of limitations; 'deposits' are not"); *Finkelstein v. United States,* 943 F.Supp. 425, 430 n. 16 (D.N.J.1996) ("[w]hen a remittance is not in the nature of a payment of tax, but rather is a deposit in the nature of a cash bond, formal refund procedures do not apply"); *Crosby v. United States,* 889 F.Supp. 148, 150 (D.Vt.1995)

---

**6.** *See Wurts,* 303 U.S. at 415–16, 58 S.Ct. 637 (Internal Revenue Code contains certain "limitation[s] of the Government's long-established right to sue for money wrongfully or erroneously paid from the public treasury").

**7.** Domino counters that the six year statute of limitations set forth in 28 U.S.C. § 2415 is not applicable to the instant case because § 2415(h) explicitly provides that "[n]othing in this Act shall apply to actions brought under the Internal Revenue Code or incidental to the collection of taxes imposed by the United States." *But see Lucia v. United States,*

474 F.2d 565, 569–70 (5th Cir.1973)("there is no substantive or fundamental right to the shelter of a period of limitations"). *But cf. Hawk Contracting, Inc.,* 649 F.Supp. at 3 ("there is no fundamental right to a period of limitations upon the assessment and collection of taxes ... and Congress has provided none in this instance"); *United States v. Donlon,* 355 F.Supp. 220, 223 (D.Del.1973), *aff'd,* 487 F.2d 1395 (3d Cir.1973) ("[t]here is no fundamental right to have taxes assessed and collected within any period of limitation").

("the limitation period established under Section 6511(b)(2)(A) applies only to tax payments, and therefore does not serve as a time bar to remittances characterized as deposits").

Here, the Government is entitled to develop the record so that it can be determined whether this is a case of "what's good for the goose" may also be good for the gander. That is, since the Internal Revenue Code's statutory refund procedures do not apply to taxpayers who remit deposits/cash bonds, it is at least arguable that the statutory (erroneous) refund procedures should, similarly, not apply where, as here, the Government seeks return of interest mistakenly paid on a (purported) deposit/cash bond.[8] **As a taxpayer, Domino would not normally be entitled to interest on a deposit in the nature of a cash bond.** *See* Rev. Proc. 84–58, § 5.04, 1984–2 C.B. 503 ("[n]o interest will be allowed or paid on a deposit, or any portion of a deposit, returned to a taxpayer before or after assessment"). *See also Busser v. United States,* 130 F.2d 537, 538 (3d Cir.1942)(Government "is not liable for interest unless there is a statutory requirement or a contract to pay it").

The concept of a deposit of tax, as opposed to a payment of tax, is a judicial construct stemming from the Supreme Court's decision in *Rosenman v. United States,* 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945). The Internal Revenue Code "does not deal with deposits of taxes or provide procedures for their making or recovery." *New York Life Ins. Co. v. Unit-*ed States, 118 F.3d 1553, 1556 (Fed.Cir. 1997), *cert. denied,* 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998). Accordingly, Domino's argument that § 6532(b) reflects Congress' " 'clearly manifested intention' to raise a statutory barrier" to the Government's effort to recover interest mistakenly paid on Domino's self-described deposit seems, at least, arguable.[9] *See Wurts,* 303 U.S. at 416, 58 S.Ct. 637. *Cf. O'Gilvie v. United States,* 519 U.S. 79, 92, 117 S.Ct. 452, 136 L.Ed.2d 454 (1996)(discussing the Supreme Court's "normal practice of construing ambiguous statutes of limitations in Government action in the Government's favor") (citation omitted).

In evaluating whether a remittance is a deposit or a payment, the Court of Appeals for the Second Circuit has rejected the so-called "per se" test. Instead, while not explicitly adopting the "facts and circumstances" test, the Court of Appeals nevertheless, appears to countenance examination of the individual facts and circumstances to determine the character of the remittance. *See Ertman v. United States,* 165 F.3d 204, 208–09 (2d Cir.1999). This approach involves analysis of: (i) the timing of the assessment or definition of the tax liability; (ii) the taxpayer's intent with respect to the remittance; and (iii) the IRS's treatment of the remittance upon receipt. *Id* at 207.[10] In *Ertman,* the Second Circuit observed:

> At first blush, it would appear that the "facts" and "facts and circumstances" test would generally require a trial to make the fact-specific inquiry that the

---

8. The Court expresses no opinion at this time as to whether Domino's December 1990 remittance was, in fact, a deposit/cash bond or a payment of tax.

9. Counsel are invited, as this case goes forward, to research and analyze the legislative history of 26 U.S.C. § 6532(b) and 28 U.S.C. § 2415.

10. *See Crosby,* 889 F.Supp. at 152 n. 6 ("[t]he Court agrees with those courts and commentators that place significant weight on the intent of the taxpayer when resolving disputes over the nature of a cash remittance") (citations omitted). *See also Ertman,* 972 F.Supp. at 708 ("[t]he taxpayer's intent is the ultimate question").

test entails. And yet a significant number of courts (including courts in jurisdictions that have expressly adopted the "facts and circumstances" test . . .) have held that certain types of remittances can categorically be deemed payments.

*Id.*

Here, the circumstances surrounding Domino's December 1990 remittance need to be explored further. Discovery concerning the December 1990 remittance is appropriate.

### Conclusion

**For the foregoing reasons, Domino's motion to dismiss is denied.** The parties are directed to appear at a conference with the Court on October 7, 1999, at 9 a.m., in Courtroom 706 of the U.S. Courthouse, 40 Centre Street, New York, New York, to discuss a schedule for further proceedings. The parties are encouraged to engage in good faith settlement negotiations prior to the conference with the Court